# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JESSICA PENDERGAST, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 2:13cv933 |
| ) | **Electronic Filing** |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

September 19, 2014

**I.   INTRODUCTION**

Plaintiff, Jessica Pendergast ("Plaintiff" or "Pendergast") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security, Carolyn Colvin ("Commissioner" or "Colvin") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434, & 1381-1383f.  Plaintiff protectively filed an application for DIB on June 21, 2010, and she filed an application for SSI on June 23, 2010, alleging disability beginning June 1, 2007.  R. 11, 162-169, 263.  The application was initially denied on October 19, 2010, and Plaintiff timely requested a hearing on December 10, 2010.  R. 11, 71-81, 85-86.

A hearing was held on October 6, 2011, before Administrative Law Judge Joanna Papazekos (the "ALJ"), and a Vocational Expert ("VE"). R. 26-68. Plaintiff, who was

represented by a non-attorney representative[1], appeared and gave testimony. *Id.* The ALJ issued a written decision on November 14, 2011, finding that Plaintiff was not disabled under the Act because she could perform a full range of work at all exertional levels with certain nonexertional limitation. R. 17. Plaintiff timely requested a review of the ALJ's decision to the Appeals Council, which was denied on May 9, 2013, making the ALJ's decision the final decision for judicial review pursuant to 42 U.S.C. § 405(g). R. 1-5. Plaintiff subsequently filed his appeal with this Court.

The record was developed fully at the administrative level and the parties have filed cross motions for summary judgment. For the reasons set forth below, Plaintiff's motion for summary judgment will be denied, the Commissioner's motion for summary judgment will be granted and final judgment will be entered against Plaintiff and in favor of the Commissioner.

## II. STATEMENT OF THE CASE

Plaintiff was born on June 16, 1990, making her 21 years of age on the date of the hearing. R. 31. Plaintiff, a special education student, completed tenth grade. R. 33. She reported past work at a number of fast food jobs, which she did well when she adhered to her prescribed psychiatric medications. R. 465.

Plaintiff treated with a psychiatrist, Paige Forrest, M.D. ("Dr. Forrest") from April 2010 to July 2010. R. 398-422. In April of 2010, Dr. Forrest assessed Plaintiff with attention deficit hyperactivity disorder ("ADHD") and mood disorder not otherwise specified ("NOS"). R. 408. Dr. Forrest also noted that Plaintiff did not meet the criteria for major depressive disorder ("MDD") or bipolar disorder. *Id.* During a mental status examination in June of 2010, Plaintiff

---

[1] The Act permits non-attorneys to represent claimants in Social Security disability proceedings conducted before the Commissioner. 42 U.S.C. § 406(a)(1).

reported that she wanted to resume taking Depakote, stating that she felt better when she was taking Depakote and Seroquel. R. 403. Plaintiff also indicated that she did not contact a therapist because she did not want to attend therapy; she just wanted her "meds". *Id.* Dr. Forrest further noted that Plaintiff: (1) was cooperative but irritable; (2) had good grooming; (3) made fair eye contact; (4) had normal speech; (5) had no suicidal or homicidal ideation; and (6) had no delusions. R. 404. Plaintiff's cognitive function was grossly intact, her insight poor, and her judgment fair. *Id.* Dr. Forrest diagnosed Plaintiff with mood disorder, NOS, and again stressed the importance of therapy. *Id.*

On June 30, 2011, Plaintiff sought treatment for depression with Family Psychological Associates ("FPA"). R. 516-526. Her initial mental status examination revealed: depressed mood; coherent thoughts; no suicidal or homicidal ideation; impaired memory, concentration, impulse control and judgment; and poor insight. R. 524. The clinical director diagnosed Plaintiff with major depressive disorder, recurrent, moderate, and assigned a global assessment of functioning ("GAF") score of fifty (50)[2]. R. 524-525. Plaintiff was hospitalized briefly for inpatient psychiatric treatment with Alle-Kiski Medical Center. R. 506-509.

In August 2011, Kenneth Goetz, M.D. ("Dr. Goetz") conducted a follow-up mental status examination at FPA which revealed that Plaintiff was pleasant, cooperative, anxious, and tearful. R. 515. Her speech was normal, eye contact good, but her mood was depressed and her affect blunted. *Id.* Dr. Goetz noted that Plaintiff had vague suicidal ideation, without plan, was non-psychotic, and grossly, cognitively intact. *Id.* Dr. Goetz diagnosed Plaintiff with major

---

[2] A GAF score in the range of 41-50 denotes "serious symptoms . . . OR any serious impairment in social occupational, or school functioning." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34. It is one point below the range for "moderate symptoms . . . OR moderate difficulty in social occupational, or school functioning." *Id.*

depression, recurrent and post-traumatic stress disorder, assigning a GAF score of 31[3]. *Id.* Later that same month, Dr. Goetz assessed Plaintiff with a depressed mood, but normal affect, speech, orientation, memory, and attention and concentration. R. 512. Dr. Goetz also noted that Plaintiff had good judgment and insight, and no suicidal ideation. *Id.*

In September of 2011, Dr. Goetz completed a mental residual functional capacity questionnaire, in which he opined that Plaintiff had severe restrictions in work-related abilities. R. 534-535. He also opined that Plaintiff would be absent from work more than four (4) days per month. R. 535.

Dante E. Mancini, Ph.D. conducted a psychological consultative examination, and completed a functional assessment of Plaintiff in September of 2010. R. 463-471. Dr. Mancini diagnosed Plaintiff with bipolar disorder, moderate; polysubstance dependence; antisocial personality disorder; and borderline personality disorder. R. 467. He assessed a current GAF of 50 with a highest score in the previous year of 65.[4] Dr. Mancini noted that Plaintiff reported using no psychotropic medications despite her reported history of improved functioning while adhering to such treatment. R. 467.

Dr. Mancini assessed no limitations in Plaintiff's ability to understand, remember, and carry out simple instructions and slight restriction in doing so for detailed instructions. R. 470. Dr. Mancini found moderate limitations in work-related social interaction (but marked limitations in interacting with supervisors), and responding appropriately to work pressures and changes. *Id.*

---

[3] A GAF score in the range of 31-40 is indicative of some impairment in reality testing or communication. DSM-IV, 34.

[4] A GAF score in the range of 61-70 denotes some mild symptoms. DSM-IV, 34.

Douglas Schiller, Ph.D. ("Dr. Schiller"), a State agency psychologist, assessed Plaintiff's mental abilities based on a review of Plaintiff's medical history, and whether she met a listed impairment. R. 475-490. Dr. Schiller opined that Plaintiff could meet the basic mental demands of competitive work on a sustained basis despite limitations resulting from her impairment R. 477. Dr. Schiller also completed a psychiatric review technique analysis, determining that Plaintiff's mental impairments – bipolar disorder, personality disorder (borderline/antisocial) – did not meet a listed impairment. R. 478-489. For purposes of the Listings, Dr. Schiller assessed Plaintiff with: mild restrictions in activities of daily living, and moderate restrictions in social functioning and maintaining concentration, persistence, or pace. R. 488.

The ALJ denied Plaintiff's application for DIB and SSI benefits finding that although Plaintiff's ability to engage in substantial gainful activity is restricted by limitations resulting from several impairments that qualified as severe, including chronic obstructive pulmonary disease ("COPD"), asthma, migraines, obesity, ADHD, bipolar disorder, PTSD, and drug and alcohol abuse, Plaintiff retains the residual functional capacity to perform a full range of work at all exertional levels that will accommodate her need for: (1) simple, routine and repetitive work in a clean air environment; (2) no concentrated exposure to gases, fumes, odors and particulates; and (3) limited contact with the public, but occasional contact with co-workers and supervisors. R. 17, 64-65.

The ALJ asked the Vocational Expert ("VE") to assume that the hypothetical individual was limited to performing simple, repetitive work in a clean air environment routine tasks; no concentrated exposure to gases, fumes, odors and particulates with no contact with the public but occasional contact with co-workers and supervisors; worker that maintains a steady pace; and a job that does not involve reading or math above a third or fourth grade level. R. 64-65. The VE

5

testified that the hypothetical individual could perform several occupations across the exertional categories, each encompassing a significant number of jobs in the national society. R. 64. The VE identified the following occupations bench assembler, machine feeder, and hand packer. Plaintiff's applications for DBI and SSI were, therefore, denied.

**III.     STANDARD OF REVIEW**

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly

limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D. Pa. 2005).

8

**IV. DISCUSSION**

Within the meaning of social security law, a "disability" is defined as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last, for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). To be found disabled, an individual must have a "severe impairment" which precludes the individual from performing previous work or any other "substantial gainful activity which exists in the national economy." 20 C.F.R. § 404.1505. The claimant bears the ultimate burden of proving disability within the meaning of the Act. *See* 42 U.S.C. § 423(d)(5)(A) (providing that "[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner may require"); 20 C.F.R. §§ 404.1512(a), 416.912(a).

1. ALJ's Evaluation of Medical Opinions

Plaintiff argues that the ALJ erred in his RFC analysis, specifically concerning the weight afforded to the opinions of Dr. Goetz, Dr. Mancini, the consultative examiner, and state agency expert psychologist Dr. Schiller. Plaintiff contends that the ALJ gave great weight to the non-examining "check-box" opinion of Dr. Schiller and rejected the medical opinions of Dr. Goetz, a treating psychiatrist, and Dr. Mancini, a consultative psychologist. Moreover, Dr. Goetz and Dr. Mancini personally examined Plaintiff, while Dr. Schiller never met her.

A principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Morales*

9

*v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)); *see also Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 355 (3d Cir. 2008) (a treating physician's opinions may be entitled to great weight - considered conclusive unless directly contradicted by evidence in a claimant's medical record - particularly where the physician's findings are based upon "continuing observation of the patient's condition over a prolonged period of time."). Opinions expressed by treating and examining physicians, however, do not inevitably bind the Commissioner on the issue of a claimant's residual functional capacity. *Brown v. Astrue*, 649 F.3d 193, 196, n. 2 (3d Cir. 2011). When conflicting medical assessments are presented, an administrative law judge is usually "free to choose the medical opinion of one doctor over that of another." *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 505 (3d Cir. 2009). Nonetheless, the probative force of any medical opinion can only be judged in relation to the evidentiary record as a whole. *Miller v. Commissioner of Social Security*, 172 F.3d 303, 304 (3d Cir. 1999).

As an initial matter, neither Dr. Goetz's nor Dr. Mancini's opinions are based "upon a continuing observation of the patient's condition over a prolonged period of time." To the contrary, Dr. Mancini, a consultative psychologist, met with Plaintiff once, and Dr. Goetz, based on the record, appears to have personally met with Plaintiff twice, on August 12, 2011, and on August 26, 2011. R. 510. This hardly qualifies Dr. Goetz as a treating physician under the regulations. *See*, 20 C.F.R. §§ 404.1502, 416.902 (defining a "treating source" as one with an ongoing relationship with the plaintiff); *see also* 20 C.F.R. §§ 404.1527(d)(2)(i), 416.926(d)(2)(i) (identifying frequency of examinations as a factor in weighing an opinion). Dr. Goetz's opinion carries no more weight than that of Dr. Forrest, a psychiatrist, who treated Plaintiff from April

2010 to July 2010. Dr. Forrest assessed Plaintiff with ADHD and mood disorder NOS, but noted that Plaintiff did not meet the criteria for major depressive disorder or bipolar disorder. R. 408.

Dr. Mancini's evaluation of Plaintiff, in fact, supports the ALJ's RFC assessment. Dr. Mancini's evaluation revealed a euthymic mood and relatively normal range of affect, and that Plaintiff's memory was intact, her speech was normal, and her thought process spontaneous, goal directed, and relevant. R. 466-467. He assessed a current GAF of 50 with a highest score in the previous year of 65, which denotes mild symptoms. R. 467.

The ALJ also found that Dr. Goetz's and Dr. Mancini's findings related to disabling limitations were inconsistent with the evidence of record and Plaintiff's own admissions of high functionality. Plaintiff had past relevant work at a number of fast food jobs, and she reported that she did well at work when she adhered to her prescribed psychiatric medications. R. 465. Plaintiff also reported that she regularly did housekeeping chores, such as washing and putting dishes away, vacuuming, taking out the household trash, and taking care of her pet cats. R. 53-54, 285, 467. She could prepare foods such as steak, fried chicken, and baked goods, such as brownies, cookies, and pies. R. 52, 286, 467. Plaintiff also testified that she was married, but had separated from her husband as of August 2011. R. 31-32.

At the hearing, Plaintiff testified that she hangs out with friends, goes swimming, plays on the computer, including maintaining a Facebook account, and helps take care of her sister's two youngest children. R. 54-55, 58. She reported that she could sew, played sports, rode her bicycle, and camped and fished as hobbies. R. 287. Plaintiff further testified that her psychiatric medications were helping. R. 45-46.

With regard to Dr. Schiller, an assessment prepared by a nonexamining consultant will not normally constitute "substantial evidence" of a claimant's ability to work when it is

contradicted by reports submitted by treating and examining sources. *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008); *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). That is especially true in cases involving claimants afflicted with mental impairments. A mental health professional cannot normally "formulate medical opinions based upon objective findings derived from clinical tests." *Sheehan v. Metropolitan Life Insurance Co.*, 368 F.Supp.2d 228, 255 (S.D.N.Y. 2005). However, State agent opinions also merit significant consideration. *See* SSR 96-6p, 1996 SSR LEXIS 3 ("Because State agency medical and psychological consultants . . . are experts in the Social Security disability programs, . . . 20 C.F.R. §§ 404.1527(f) and 416.927(f) require [ALJs] . . . to consider their findings of fact about the nature and severity of an individual's impairment(s) . . . ."). *See also Chandler v. Commissioner of Social Security*, 667 F.3d 356, 361 (3d Cir. 2011) (noting that State agency consultant opinions merit significant consideration).

In this instance, Dr. Schiller's opinion was consistent with the evidence of record. Dr. Schiller opined that Plaintiff could meet the basic demands of competitive work on a sustained basis despite her mental limitations, consistent with the ALJ's RFC. Accordingly, this Court finds no merit to Plaintiff's contention that the ALJ failed to properly assess the medical evidence of record.

2. <u>The ALJ's Evaluation of Plaintiff's GAF</u>

Plaintiff argues that the ALJ committed an error of law by not appropriately taking into account Plaintiff's GAF scores, contending that a GAF score "is a medical diagnosis" that was improperly disregarded by the ALJ. Plaintiff's argument is without merit.

Under the regulations, GAF scores do not directly correlate to a determination of whether an individual is or is not disabled under the Act: The GAF scale, which is described in the DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by the

12

American Psychiatric Association. It does not have a direct correlation to the severity requirements in our mental disorders listings. 65 Fed. Reg. 50746, 50764-65; *see Campbell v. Astrue*, 2013 U.S. Dist. LEXIS 51295, 2-3 (W.D. Pa. Apr. 10, 2013). While a GAF score can assist an ALJ in understanding the limitations contained in the opinions of medical professionals, the actual number itself does little to describe the specific functional limitations caused by the claimant's impairments. *See Howard v. Commissioner of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy."). Although, under certain circumstances, a GAF score can be considered evidence of disability, standing alone, a GAF score does not evidence an impairment seriously interfering with a claimant's ability to work. *See Lopez v. Barnhart*, 78 Fed. Appx. 675, 678 (10th Cir. 2003). Moreover, GAF scores may indicate problems that do not necessarily relate to the ability to hold a job. *See Zachary v. Barnhart*, 94 Fed. Appx. 817, 819 (10th Cir. 2004); *Wilkins v. Barnhart*, 69 Fed. Appx. 775, 780 (7th Cir. 2003); *Power v. Astrue*, 2009 U.S. Dist. LEXIS 19147, 2009 WL 578478, at *8 (W.D. Pa. Mar. 5, 2009).

In the instant matter, the ALJ gave little weight the Dr. Goetz's assessment that Plaintiff had a GAF score of 31. The ALJ found it inconsistent with the evidence of record and based heavily on Plaintiff's subjective complaints. It also seems suspect that one month prior the clinical director of the FPA assigned Plaintiff a functioning GAF of 50. In 2010, Dr. Mancini assessed a GAF of 50 with a highest score in the previous year of 65.

GAF scores are not afforded any unique status in that they must expressly be discussed and analyzed in all cases. The Court must look at the overall context. For instance, in *Gilroy v. Astrue*, 351 Fed. Appx. 714 (3d Cir. 2009), the Court of Appeals for the Third Circuit held that remand was not required where the ALJ did not reference a GAF score of 45 assigned by the

treating psychiatrist where the ALJ did refer to observations from the psychiatrist's reports and where the psychiatrist did not explain the basis for the GAF score. *Id.* at 715-716. Moreover, because "the GAF scale does not directly correlate to the severity requirements in the mental disorders listings, a GAF score should be considered with all of the evidence but it is not dispositive." *Galvin v. Astrue*, 2009 U.S. Dist. LEXIS 62930, *6, n.5 (W.D. Pa., July 22, 2009). The Court finds that the ALJ properly discussed and assigned an appropriate value to Plaintiff's GAF scores in formulating her RFC.

Notwithstanding the Court's finding substantial evidence in support of the ALJ's evaluation of Plaintiff's GAF scores, it must be noted that subsequent to the ALJ's decision in this case, the GAF scale appears to have fallen into disfavor. "Due to concerns about subjectivity in application and a lack of clarity in the symptoms to be analyzed, the [American Psychiatric Association] abandoned the GAF score in its recently published fifth edition of the Diagnostic and Statistical Manual of Mental Disorders." *Solock v. Astrue*, 2014 U.S. Dist. LEXIS 81809, 2014 WL 2738632, at *6 (M.D. Pa. June 17, 2014). "It was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity . . . and questionable psychometrics in routine practice." *See* AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STAT. MANUAL OF MENTAL DISORDERS, DSM-5 16 (5th ed. 2013). In response the Social Security Administration now allows ALJs to use GAF ratings as opinion evidence when assessing disability claims involving mental disorders; however, a "GAF score is never dispositive of impairment severity," and thus an ALJ should not "give controlling weight to a GAF from a treating source unless it is well supported and not inconsistent with other evidence." SSA AM-13066 at 5 (July 13, 2013).

## V. CONCLUSION

Based on the foregoing, Defendant's Motion for Summary Judgment will be granted. Plaintiff's Motion for Summary Judgment will be denied. The decision of the ALJ is affirmed. An appropriate Order follows.

s/David Stewart Cercone
David Stewart Cercone
United States District Judge

cc: Robert W. Gillikin , II, Esquire
Michael Colville, AUSA

(*Via CM/ECF Electronic Mail*)